IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBEKAH P.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:22-cv-01889-HZ

OPINION & ORDER

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION & ORDER

Noah Schabacker
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Rebekah P. ("Plaintiff") brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 10, 2018, alleging an onset date of May 30, 2018. Tr. 76.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. Her application was denied initially and on reconsideration. Tr. 76-83.

On September 16, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36-64. On October 5, 2021, the ALJ found Plaintiff not disabled. Tr. 10-31. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on arthritis, sciatic pain, psoriasis, irritable bowel syndrome, anxiety, depression, sleeping issues, and attention deficit disorder. Tr. 183. At the time of her alleged onset date, she was 37 years old. Tr. 76. Plaintiff has at least a high school education and past relevant work experience as a retail sales manager and receptionist. Tr. 28-29.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8-1.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can

3 – OPINION & ORDER

perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date through her date last insured. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "spondylosis of the lumbar spine with radiculopathy; status post L4-5 laminectomy and microlaminectormy; irritable bowel syndrome (IBS); generalized anxiety disorder (GAD) with panic attacks; attention deficit hyperactivity disorder (ADHD); psoriatic arthritis; sinus tachycardia; hypertriglyceridemia; asthma; headaches; alcohol use disorder with alcohol withdrawal syndrome and delirium; and polyneuropathy." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> [S]he requires an entry level job involving simple routine tasks, that is non-fast-rate production, defined as involving no conveyor belt or assembly line work and no hourly quotas, in a "low stress" environment defined as one having only occasional changes in the work setting; a restroom should be available for employees on the work premises; she can lift and/or carry 5 pounds frequently, and 10 pounds occasionally (from very little up to 1/3 of an 8-hour workday); she can stand and/or walk (with normal breaks) for 2 hours in an 8-hour workday; she can sit (with normal breaks) for 6 hours in an 8-hour workday; she can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an 8-hour workday; she needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; there should be no commercial driving; she should have no more than occasional exposure to blinking or flashing lights; there should be no more

> than occasional exposure to very loud noises (Selection Characteristics of Occupations (SCO) Code 5 level noise that is on par with a rock concert or jack hammer); job responsibilities do not include the use of hand-held vibrating or power tools; she needs to be restricted to a work environment with good ventilation and that allows her to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; she needs to be restricted to a work environment that allows her to avoid frequent concentrated exposure to pulmonary irritants such as fumes, dust, gases, and smoke; and she can perform the following occasionally: climbing stairs with handrails, stooping, crouching, kneeling, and crawling, but she needs to avoid climbing ladders, scaffolds, and ropes.

Tr. 20. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 28. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as office clerk, order clerk, and assembler Tr. 29. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 31.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ made two errors at step five: (1) the jobs of office and order clerk conflict with the ALJ's RFC; and (2) the ALJ failed to reconcile the testimony of the vocational expert's ("VE") with Plaintiff's evidence regarding how many jobs of assembler are available in the national economy. The Court addresses each argument in turn.

**I.      Conflict with RFC**

First, Plaintiff argues that the ALJ erred by finding that Plaintiff could do the jobs of office clerk and order clerk, which require Level 3 Reasoning, when the RFC requires jobs with "simple routine tasks," which is Level 1 Reasoning. Although not explicitly, the Commissioner essentially concedes that Plaintiff is correct. Def. Br. at 4 n.1 ("Plaintiff argues that the other two jobs' descriptions in the Dictionary of Occupational Titles (DOT) were at odds with the RFC, and so should be discarded. Even if Plaintiff is correct, because there are sufficient remaining jobs in the national economy, the ALJ's finding of nondisability should be affirmed.").

The Court agrees with Plaintiff that the ALJ erred because there is a "conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("[T]here is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."). But the Court also agrees with the Commissioner that such error requires reversal and remand only if such an error was harmful, which depends on Plaintiff's second argument. *See Molina v. Astrue*, 674 F.3d 1104, 115 (9th Cir. 2012) (stating that a reviewing court will not reverse and ALJ's decision if an error was harmless).

## II. Evidence Regarding Jobs in the National Economy

Plaintiff next argues that the ALJ failed to reconcile a purported inconsistency between the testimony of the VE as to the number of jobs available in the national economy that Plaintiff can perform, and the Plaintiff's proffered contrary job-number estimates submitted to the ALJ after the hearing.

### A. Hearing Testimony and ALJ Decision

At the hearing, the VE testified that Plaintiff could perform the job of simple assembly assembler, with a Dictionary of Occupational Titles ("DOT") code of 713.687-018, and that there were 50,000 such jobs in the national economy. Tr. 59. Plaintiff's attorney asked the VE to explain how she arrived at the 50,000 number. Tr. 61. The VE explained that she relied on the "Bureau of Labor Statistics, Department of Labor, as well as Job Browser, SkillTRAN, [INAUDIBLE] and, you know, my background, experience in job placement."[3] Tr. 62. The VE also testified that the net figure came from "a combination of a circuit board, bench hand, and final assembler [jobs] which are all sedentary." Tr. 61.

Plaintiff's attorney was skeptical that the VE's experience was relevant to how many jobs were in the national economy, and asked: "I understand you know about the jobs as far as job placement, but that doesn't have anything to do with the numbers, right? I mean, basically Bureau of Labor Statices and SkillTRAN Job Browser Pro [are] correct as far as the actual job numbers?" Tr. 62. The VE answered that she "utilized those resources as part of the numbers that I used." Tr. 62-63.

---

[3] SkillTRAN's Job Browser Pro is software that attempts to "bridge the gap" between the "lack of correspondence between DOT occupation codes and [Standard Occupational Classification ("SOC")] employment data" that, therefore, assist "VEs to determine how many of the jobs available for an SOC code match the claimant's specific DOT code or codes." *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023).

7 – OPINION & ORDER

After the hearing but before the ALJ issued his opinion, Plaintiff's attorney submitted a letter with exhibits to the ALJ. Tr. 240-306. The letter explained that the exhibits were "Job Browser Pro's estimates for the three assembly jobs" that the VE testified about at the hearing, and Plaintiff's attorney argued that "Job Browser itself estimates far fewer than 50,000 jobs that the VE testified" to. Tr. 305. Specifically, the letter stated:

> Touch-up screener (726.684-110) part of OES 51-9061, is estimated to have 1,003 jobs nationally. Final assembler (713.687-018), part of OES 51-9199, is estimated to have 27 jobs nationally. Finally, Charger II (700.687-026) is estimated to have 0 jobs nationally (see page 18 of the job numbers for OES 51-9199). Note that OES 51-9199 contains 1527 different DOT codes.
>
> It is perhaps reasonable for the VE to rely on Job Browser Pro; however, the evidence we are submitting at this time show that either the VE is using an older version of Job Browser Pro or the VE does not know how to properly use or interpret the program.

*Id.*

In his opinion, the ALJ relied on the VE's testimony and found that Plaintiff could perform the following available jobs:

> [O]ffice clerk, DOT 249.567-014, with approximately 30,000 jobs in the national economy; order clerk, DOT 209.567-014, with approximately 30,000 jobs in the national economy; and assembler, DOT 713.687-018, with approximately 50,000 jobs in the national economy. The undersigned finds that these occupations, individually and in combination, support the existence of a significant number of jobs in the national economy.

Tr. 30. After making his finding, the ALJ acknowledged that Plaintiff objected to the VE's job numbers but that the ALJ "overrules this objection as it is without merit." Tr. 30. Although the ALJ did not reference Plaintiff's letters and exhibits explicitly, the ALJ explained that the VE was appropriately qualified to offer her expert opinion, that the regulations "recognize that examples of occupations provided by vocational experts need not be precise, but may instead refer to a grouping of numerous individual jobs with similar duties. The vocational expert was

appropriately qualified to offer her opinion in this matter." *Id.* The ALJ concluded that the "vocational expert's job information is found to be reliable." *Id.*

### B. Analysis

Plaintiff argues that the ALJ failed to address the inconsistencies between the VE's job numbers and those offered by her after the hearing. First, the Court rejects Plaintiff's argument that the ALJ failed to address the inconsistencies. Although the ALJ did not explicitly address the difference in the numbers, he offered a rationale as to why he was accepting the VE's testimony, specifically, that he was relying on expertise and background and that he found her "job information reliable." Tr. 30 Such a rationale is acceptable. *See Vasquez*, 572 F.3d at 591 ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." (quotations and brackets omitted)).

Second, even if the ALJ had failed to address the inconsistency, the question remains if he was required to do so. "[T]o determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), we consider on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value." *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022)). Here, the decision in *Wischmann* is controlling, as the facts of *Wischmann* are strikingly similar to the facts presented here.

In *Wischmann*, the claimant's attorney submitted a letter to the Appeals Council that "using Job Browser Pro" said the available job numbers were significantly lower than what the VE had testified to at the hearing. *Id.* The Ninth Circuit found that "[t]he letter by [the claimant's] counsel and the six pages of printouts together provide no basis to conclude that these results qualified as significant probative evidence." *Id.* at 506. The court went on to explain

9 – OPINION & ORDER

that the "letter does not show that the data enclosed were produced using the same methodology as that used by the VE." *Id.* at 506–07. The software is meant only to "assist a VE in performing a complex matching exercise of various sources of information from official and private sources," the software does not create the data itself. *Id.* at 507. The Ninth Circuit also noted that the letter did not state "which version of the program was used, so we do not know whether the information used by the program was current or out of date." *Id.* Finally, the court noted that the raw data of these pages are "not comprehensible to a lay person, and [the claimant's attorney] does not provide the interpretation necessary to make the pages meaningful." *Id.* Therefore, the Ninth Circuit concluded that "because the letter and attachments are not probative evidence, they do not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve. Therefore, there is no need to remand." *Id.* (citation omitted).

The same is true here. Plaintiff argues that the VE testified she relied solely on Job Browser Pro for her job numbers. But that misstates her testimony. She testified that she came to her number by using data from the Bureau of Labor Statistics, Department of Labor, and Job Browser, as well as combining various positions that fell within the DOT definition of assembler. Tr. 61-62. In his letter, Plaintiff's attorney offered no explanation of his methodology, and only named the software he used to produce the results. Tr. 305. "A software program, however, is merely a tool that must be used appropriately to produce reliable results." *Wischmann*, 68 F.4th at 507. The attorney offered no explanation regarding "what queries were entered into the computer program, what variables were changed, or what filters were applied to the data." *See id.* And as the Ninth Circuit held, the raw data is "not comprehensible to a lay person," and the attorney "does not provide the interpretation necessary to make the pages meaningful to a court." *See id.*; *cf. Decker v. Berryhill*, 856 F.3d 659, 663–65 (9th Cir. 2017) (explaining that because

10 – OPINION & ORDER

the claimant "failed to submit evidence interpreting the added test results that would have made them more meaningful to the district court" remand was "not inevitable")). Therefore, because the letter and exhibits are not probative evidence, they do not give rise to the sort of inconsistency that an ALJ is required to resolve. *See Wischmann*, 68 F.4th at 507; *Kilpatrick*, 35 F.4th at 1193–94.

Although the ALJ erred in finding Plaintiff capable of the jobs of office clerk and order clerk, such error was harmless because the ALJ found Plaintiff capable of the job of assembler, of which there are 50,000 jobs available in the national economy, and 50,000 is a significant number of available jobs. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (concluding that none of the Ninth Circuit's previous decisions "precluded the possibility that 25,000 jobs constitutes a significant number"); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding 64,000 nationwide jobs a significant number); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (finding 125,000 nationwide jobs is significant); *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (finding 1,680 jobs is insignificant). Therefore, any alleged error was harmless, and there is no need to remand.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: September 29, 2023.

_____
MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER